WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BakeMark USA LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Carolyn Pastis, et al.,<br><br>　　　　　Defendants. | No. CV-23-02674-PHX-SMB<br><br>**TEMPORARY RESTRAINING ORDER** |

Plaintiff filed a Complaint (Doc. 1) and Application For: (1) Temporary Restraining Order; (2) Order to Show Cause Why A Preliminary Injunction Should Not Issue; and (3) Expedited Discovery (Doc. 7) which was supplemented by the Memorandum of Points and Authorities (Doc. 8). The Court issued an order to show cause why the temporary restraining order should not issue (the "Order"). (Doc. 15.) The Order directed Defendant to file a response to the order to show cause by no later than 5:00 pm on January 5, 2023 and set a hearing for January 12, 2023. (*Id.*) The Order was personally served upon Defendant on December 28, 2023 (Doc. 17) and this Court held a temporary restraining order hearing on January 12, 2023, for which Defendant failed to appear.

**I.　　BACKGROUND**

Plaintiff is a national company that manufactures and sells a variety of baking products, ingredients, and supplies. (Doc. 1 at 2.) Defendant was previously employed as a Senior Buyer at Plaintiff's Tempe facility. (*Id.*) In this position, she was made privy to some of Plaintiff's customers, customer base, and other confidential company information.

(*Id.* at 4, 10.)  Before beginning her job, Defendant was required to sign an employment agreement ("the Agreement").  (*Id.* at 4, 34–38.)

The Agreement contained several confidentiality provisions and a return of materials provision.  (*Id.* at 34–38.)  The Agreement prohibits the disclosure of "confidential information" which is defined as "trade secrets (as defined by applicable law) or other confidential and proprietary information relating to the Company's customers, manufacturing, products, services, pricing and sales, research, business, practices [or] procedures . . . that Employee becomes privy to by virtue of employment with [BakeMark]."  (*Id.* at 4, 35.)  This definition includes "(ii) information about [BakeMark's] internal methods of operation and manufacturing . . . " and "(iii) information about the companies . . . practices and strategies . . . [BakeMark's] suppliers . . . ; and non-published financial information relating to [BakeMark's] income, budgeting, cost structures, expenses, profits, and general financial standing."  (*Id.*)

In May 2022, Defendant sent a report detailing several allegations about the operations of the Tempe branch and her co-workers.  (*Id.* at 5.)  In this report, Defendant alleged that (1) Plaintiff was keeping goods in storage beyond their expiration dates and selling them to customers, and (2) that Plaintiff was selling products that showed signs of pests on the exterior of the packaging.  (*Id.* at 5–6.)  In response, Plaintiff requested an inspection by the Maricopa County Environmental Service Department's Health Division, which issued Plaintiff an "A" rating in response to the claims.  (*Id.* at 6.)  Plaintiff shared the results with Defendant and explained to her the falsity of those allegations with information and relevant standards.  (*Id.*)

Defendant subsequently made similar claims, prompting another health inspection at Plaintiff's request.  (*Id.* at 7.)  Plaintiff also conducted its own internal investigation.  (*Id.*)  Neither investigation turned up any evidence of Defendant's claims, and Plaintiff received another "A" rating from Maricopa County.  (*Id.*)  In February 2023, Defendant published her first accusations detailing "illegal" company activity to her LinkedIn profile.  (*Id.* at 8.)  In this first post, she accused Plaintiff of "cook[ing] the books" and "forg[ing]

legal documents !" and accompanied her accusation with "#legal #fraud #forgery Federal Bureau of Investigations (FBI) Clearlake Capital Group." (*Id.*)  On February 14, 2023, Plaintiff demanded that Defendant remove the post, which she agreed to do three days later. (*Id.*)

On July 17, 2023, Defendant resigned from her position. (*Id.* at 9.)  However, on November 30, 2023, Defendant began posting more allegations on LinkedIn. (*Id.*)  She first posted that Plaintiff sells "infested" product and claimed that the photos she posted along with her allegations "[didn't] even scratch the surface of the documentation [she] [has]!" (*Id.*)  Later that same day, Defendant posted an alleged recounting of her interactions with Plaintiff and Clearlake Capital Group ("Clearlake"), an investor in Plaintiff. (*Id.*)  In the post, she repeated her allegations and stated again that Plaintiff was shipping "insect-infested truckloads." (*Id.*)  Defendant posted one final time that day, this time alleging that Plaintiff "mishandle[s] and misrepresent[s] inventory to a pathological degree," "routinely commit[s] rampant inventory and accounting fraud." (*Id.* at 9–10.) This final post also repeated the claim that Plaintiff ships "infested inventory," resulting in "multiple truckloads" of returns and that Plaintiff refuses to throw away "expired" inventory.

On December 14, 2023, Defendant published a post on Facebook, tagging Krispy Kreme Doughnuts and Clearlake. (*Id.* at 10.)  In this post, Defendant published images claiming to show infested products. (*Id.*)  In a separate post on the same day, Defendant claimed that Plaintiff "illegally" refused to "track fumigation" of product apparently sold to Krispy Kreme and posted images of internal communications she had with her former fellow employees. (*Id.* at 11.)

Plaintiff contends that at all times, Defendant was aware through her knowledge gained as a Senior Buyer and through the results of the investigations shared with her that her accusations were false. (*Id.*)  Plaintiff now seeks a temporary restraining order ("TRO") to enjoin Defendant from continuing to broadcast these allegations.

## II. LEGAL STANDARD

Under Rule 65 of the Federal Rules of Civil Procedure, a party may seek injunctive relief if it believes it will suffer irreparable harm during the pendency of an action. The analysis for granting a TRO is "substantially identical" to that for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Cochran v. Rollins*, No. CV 07-1714-PHX-MHM (JRI), 2008 WL 3891578, at *1 (D. Ariz. Aug. 20, 2008). "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted))); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").

A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this "serious questions" variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

## III. DISCUSSION

### A. Likelihood of Success on the Merits

#### i. Defamation Per Se

Under Arizona law, there are three elements of a defamation claim: "(1) defendant made a false defamatory statement about plaintiff, (2) defendant published the statement

to a third party, and (3) defendant knew the statement was false, acted in reckless disregard of whether the statement was true or false, or negligently failed to ascertain the truth or falsity of the statement." *Farrell v. Hitchin' Post Trailer Ranch*, No. 1 CA-CV 11-0011, 2011 WL 6057930, at *2 (Ariz. Ct. App. Dec. 6, 2011) (citing *Peagler v. Phoenix Newspapers, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977)). "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989). "Under Arizona law, a statement is defamatory per se when the defamatory character of the statement is apparent on its face; that is, when the words used are 'of such a nature that the court can presume as a matter of law that the communication will tend to degrade or disgrace the party defamed.'" *McKnight v. McKnight*, No. CV-20-01956-PHX-DWL, 2021 WL 4133970, at *4 (D. Ariz. Sept. 10, 2021) (internal quotations omitted) (quoting *McClinton v. Rice*, 265 P.2d 425, 429–30 (Ariz. 1953)).

Plaintiff has presented evidence that Defendant's claims were investigated internally as well as by third parties. Through these investigations, Defendant's allegations were deemed meritless. The results of the investigations were shared with Defendant, therefore she knew her complaints were unfounded. Despite these results, Defendant published those same allegations on social media. The Court finds Plaintiff has shown a likelihood of success on the merits of the Defamation claim.

   *ii. Breach of Contract*

Under Arizona law, a claim for breach of contract has three elements: (1) the existence of a contract between the plaintiff and defendant; (2) a breach of the contract by defendant; and (3) resulting damage to the plaintiff. *Frank Lloyd Wright Found. v. Kroeter*, 697 F. Supp. 2d 1118, 1125 (D. Ariz. 2010).

Here, Plaintiff alleges Defendant breached her employment agreement, specifically, the confidentiality provision, when she posted confidential information on social media. The confidentiality provision of her employment reads as follows: "Employee shall hold

Confidential Information . . . in the strictest confidence and shall not, without the prior written authorization of an authorized Company officer, or as required by law, disclose Confidential Information in any manner to any person, or use Confidential Information in any way, other than in the furtherance of Employee's duties during his/her employment with the Company." (Doc. 1 at 34.)  "Confidential Information" was defined, in part, to include "trade secrets . . . or other confidential and proprietary information relating to the Company's customers, manufacturing, products, services, pricing and sales, research, business practices, procedures or Baking Products not generally known by or available to the public that Employee becomes privy to by virtue of employment with the Company." (*Id.* at 35.)  As discussed above, Defendant posted confidential information about customers, internal communications, internal policies, and company operations.  The Court finds there is a likelihood of success on the breach of contract claim.

### B. Irreparable Harm

Irreparable harm is harm for which there is no adequate remedy at law, such as money damages. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance.  Demonstrating irreparable harm is not an easy burden to fulfill." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (internal quotation marks and citation omitted); *see also Dalkita, Inc. v. Distilling Craft, LLC*, 356 F. Supp. 3d 1125, 1131 (D. Colo. 2018). However, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841.

Here, Defendant is publishing false information that is clearly likely to harm the goodwill of a company providing food supplies.  She is also publishing confidential information about Plaintiff's customers that is likely to harm its business relationships. Finally, as Plaintiff points out, they are unlikely to recover sufficient damages from an individual to provide an adequate remedy.  Therefore, the Court finds there is a likelihood

of irreparable harm if a temporary restraining order is not issued.

### C. Balance of Equities

"In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) ("In assessing whether the plaintiffs have met this burden, the district court has a 'duty . . . to balance the interests of all parties and weigh the damage to each.'" (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir.1980))). There is no harm that would befall Defendant if the temporary restraining order issues as it merely precludes her from posting false, disproven and confidential information. Plaintiff on the other hand will continue to endure harm to its business, goodwill and reputation. The balance of equities weighs in favor of granting the TRO.

### D. Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)) "Courts have held that the public interest is served by protecting a company's right to proprietary information, business operations, and contractual rights." *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 983 (D. Ariz. 2006). Defendant's false statements in social media threaten Plaintiff's rights. The TRO is also narrowly tailored to only prevent demonstrably false statements and disclosure of confidential information. Public policy weighs in favor of issuing the TRO.

## IV. EXPEDITED DISCOVERY

"A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). District Courts in the Ninth Circuit have required a showing of

"good cause" when requesting expedited discovery. *See, e.g.*, *Voltage Pictures, LLC v. Unknown Party*, No. CV-13-728-PHX-SMM, 2013 WL 12174691, at *1 (D. Ariz. July 15, 2013); *Malibu Media, LLC v. Doe*, 319 F.R.D. 299, 302 (E.D. Cal. 2016). Good cause exists for expedited discovery because a preliminary injunction hearing will be held on February 13, 2023 and expedited discovery will ensure that evidence is not lost, destroyed, altered or deleted and the parties can present complete evidence to the Court at the hearing. Expedited discovery will be granted.

## V. CONCLUSION

For the reasons discussed above,

**IT IS HEREBY ORDERED** that until the preliminary injunction hearing on February 13, 2023:

1. Defendant, her agents, servants, employees, attorneys, and all those persons in active concert or participation with them be preliminarily and permanently enjoined and restrained from:

   a. Publishing any and all BakeMark information about its customers, customer contracts, investors or any other confidential business information;

   b. Allowing to remain published on social media any materials making statements, accusations, allegations, or implications that BakeMark sells contaminated or adulterated food (the "Defamatory Words") published before the issuance of this order;

   c. Re-publishing or publishing anew the Defamatory Words;

   d. Contacting any individual, business, enterprise or other such entity that Defendant knows or suspects is affiliated with or has a relationship with BakeMark, commercial or otherwise, in order to attempt to abrogate, cancel, terminate, or otherwise alter its relationship with BakeMark, to BakeMark's detriment, except in connection with legitimate commercial activity, such as, but not limited to, attempting to make sales to that customer on the behalf of a competitor to BakeMark, as may be permitted by any applicable

agreements between Pastis and BakeMark; and,

e. Conspiring with, aiding, assisting or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (b) above.

2. Consistent with paragraph (1) above, Defendant be ordered to remove from display, to the extent possible, any of their publications containing the Defamatory Words, including on all internet web pages.

3. Defendant be ordered to file with this Court and to serve upon Plaintiff, within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

**IT IS FURTHER ORDERED** granting Plaintiff's request for expedited discovery and ordering that within fifteen (15) days of the date of this Order, Defendant shall:

1. Identify all solicitations, advertisements, or fundraising efforts, including but not limited to those sent through email, mail, online link, or website, which use or refer to the Defamatory Words or similar statements;

2. Produce all documents (documents shall be construed as broadly as Federal Rules of Civil Procedure 26 and 25 permit and shall include, but not be limited to, any and all documents, electronically stored information, communications, email, text-messages, or data) referring or relating to any solicitations, advertisements, or fundraising efforts, including but not limited to those sent through email, mail, online link, or website, which use or refer to the Defamatory Words or similar statements;

3. Produce all documents (documents shall be construed as broadly as Federal Rules of Civil Procedure 26 and 25 permit and shall include, but not be limited to, any and all documents, electronically stored information, communications, email, text-messages, or data) identifying any and all recipients of any solicitations, advertisements, or fundraising efforts, including but not limited to those sent

through email, mail, online link, or website, which use or refer to the Defamatory Words or similar statements;

4. Identify and produce all documents (documents shall be construed as broadly as Federal Rules of Civil Procedure 26 and 25 permit and shall include, but not be limited to, any and all documents, electronically stored information, communications, email, text-messages, or data) demonstrating, all donations, payments, or money received by Defendants relating to, or as a result of, any solicitations, advertisements, or fundraising efforts, including but not limited to those sent through email, mail, online link, or website, which use or refer to the Defamatory Words or similar statements;

5. Identify each person and entity which consulted, advised, or otherwise assisted Defendants in preparing or distributing any solicitations, advertisements, or fundraising efforts, including but not limited to those sent through email, mail, online link, or website, which use or refer to the Defamatory Words or similar statements;

6. Produce all documents (documents shall be construed as broadly as Federal Rules of Civil Procedure 26 and 25 permit and shall include, but not be limited to, any and all documents, electronically stored information, communications, email, text-messages, or data) constituting communications, whether electronic or otherwise, relating or referring to any solicitations, advertisements, or fundraising efforts, including but not limited to those sent through email, mail, online link, or website, which use or refer to the Defamatory Words or similar statements;

7. Produce all documents (documents shall be construed as broadly as Federal Rules of Civil Procedure 26 and 25 permit and shall include, but not be limited to, any and all documents, electronically stored information, communications, email, text-messages, or data) constituting communications, whether electronic or otherwise, relating or referring to any solicitations, advertisements, or fundraising efforts, including but not limited to those sent through email, mail, online link, or website,

which use or refer to the Defamatory Words or similar statements, which were sent or received by any and all employees, agents, or representatives of Defendants.

**IT IS FURTHER ORDERED** that within seven (7) days' notice by BakeMark, Defendant shall present herself for deposition at a location to be designated by counsel for BakeMark.

**IT IS FURTHER ORDERED** that, effective immediately, Defendant shall preserve all originals and copies of hard copy and electronic evidence, including but not limited to all disks, personal data assistants, hard drives, virtual hard drives, online storage and other electronic storage devices in his possession, custody, or control to which they had or have access and on which relevant information may currently or have previously existed.

**IT IS FURTHER ORDERED** setting this matter for a preliminary injunction hearing on **February 13, 2024 at 1:00 p.m.** (3 hours allowed).

Dated this 12th day of January, 2024.

Honorable Susan M. Brnovich
United States District Judge